IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-02000-MSK-OES

LEESA WITT,

        Plaintiff,

v.

CONDOMINIUMS AT THE BOULDERS ASSOCIATION, and
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,

        Defendants;


CONDOMINIUMS AT THE BOULDERS ASSOCIATION,

        Third-Party Plaintiff,

v.

LENNAR COLORADO, LLC,
LENNAR FAMILY OF BUILDERS GP, INC.,
LENNAR HOMES OF COLORADO, LLP,
LENNAR CORPORATION,
LENNAR HOMES, INC., and
GENESEE COMMUNITIES VII, LLC,

        Third-Party Defendants.

---

## OPINION AND ORDER GRANTING, IN PART, MOTION FOR
## SUMMARY JUDGMENT AND DENYING MOTION TO DISMISS

---

**THIS MATTER** comes before the Court pursuant to Third-Party Defendants' Lennar

Colorado, LLC; Lennar Family of Builders Group, Inc.; Lennar Homes of Colorado, LLP; Lennar

Corporation; and Lennar Homes, Inc.'s (collectively, the "Lennar entities") Motion to Dismiss or,

in the alternative, for Summary Judgment **(# 30)**, Third-Party Plaintiff Condominiums at the

Boulders Association's ("the Association") response **(# 38)**, and the Lennar entities' reply **(# 42)**;

and the Lennar entities and Third-Party Defendants' Genesee Communities VII ("Genesee"),

LLC's Motion to Dismiss First Amended Third-Party Complaint or, in the alternative, for

Summary Adjudication **(# 44)**, the Association's response **(# 46)**, and the Lennar entities and

Genesee' reply **(# 48)**; and the Association's Motion to Dismiss Plaintiff's Claims for Exemplary

Damages **(# 84)**, and the Plaintiff's response **(# 87)**.[1]

## BACKGROUND

The Plaintiff commenced this action by filing a Complaint **(# 1)** in this Court on September

28, 2004, and filed an Amended Complaint **(# 3)** on October 15, 2004.

The Amended Complaint alleges that the Plaintiff purchased a condominium in a

development built by Third-Party Defendant Genesee, of which the public and common areas

were to be maintained by the Association.  Shortly after taking possession of her unit, the Plaintiff

detected a persistent, unpleasant odor in her unit.  The Association deemed the Plaintiff's

complaints to be unfounded and refused to participate in investigation or repair of the situation.

The Plaintiff subsequently vacated her unit.  Following further discussions with Genesee's insurer,

Defendant Travelers Property and Casualty Insurance Co. ("Travelers"), an investigation was

conducted, revealing construction defects in the common areas of the unit that were resulting in

the release of sewer gas inside the unit.  However, the Plaintiff maintains that the Association has

---

[1]Pursuant to D.C. Colo. L. Civ. R. 7.1(C), the Court is prepared to rule on this motion
notwithstanding the Association's time to file a reply not having yet run.

failed to remedy the defect, and that her demands upon Travelers were not reasonably investigated or paid.

The Plaintiff asserts seven causes of action: (i) breach of contract against both the Association, apparently based on her purchase agreement, and against Travelers, apparently on a third-party beneficiary theory arising out of the Association's policy with Travelers; (ii) battery against the Association, resulting from her contact with the sewer gas; (iii) assault against the Association, relating to her exposure to the sewer gas; (iv) breach of fiduciary duty against both the Association and Travelers, the latter apparently being a duty arising in a third-party beneficiary context; (v) negligent infliction of emotional distress against both Defendants, arising out of the Association's failure to act and Travelers' failure to afford insurance benefits to the Plaintiff; (vi) breach of the duty of good faith against both Defendants, allegedly arising out of a statutory duty imposed on the Association and Travelers' duty incident to its policy; and (vii) civil conspiracy between the Association, Genesee, and Travelers for allegedly having conspired for unspecified "unlawful and illegal purposes."

On February 25, 2005, the Association filed an Answer and Third-Party Complaint (#23), asserting claims against the Lennar entities. Specifically, the Association alleged that one or more of the Lennar entities acquired Genesee – and its attendant liabilities – in a corporate purchase in 2002. As a result, the Association asserted four claims against the Lennar entities: (i) indemnification; (ii) contribution; (iii) negligence; and (iv) breach of express and implied warranties.

The Lennar entities then filed the instant Motion to Dismiss or, in the alternative, for Summary Judgment (**# 30**).[2]   Specifically, the Lennar entities alleged that none of them may be held responsible for the acts of Lennar Corp.'s subsidiary, Genesee; that the State of Colorado has abolished the doctrine of implied indemnity; that no claim for contribution lies because none of the Lennar entities are liable for Genesee' acts; that the Association lacks standing to assert vicarious claims of negligence on behalf of the Plaintiff against the Lennar entities; and that the Third-Party Complaint does not allege the basis of any express or implied warranty given by a Lennar entity to the Association.

The Association initially responded to the Lennar entities' motion by filing an Amended Third-Party Complaint (**# 36**), which named Genesee as an additional Third-Party Defendant and clarified some of the claims.   Nevertheless, the Association also filed a response to the Lennar entities' motion, and the Lennar entities filed a reply, acknowledging that the motion directed at the original Third-Party Complaint may have been mooted by the filing of an Amended Third-Party Complaint.   Within a few days of their reply, the Lennar entities and Genesee filed a second

---

[2]This Court strongly discourages motions which simultaneously seek relief pursuant to both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.  The two types of motions rely on different factual records and involve different standards of review (not to mention that the two types of motions are subject to different formatting requirements under this Court's Practice Standards). Many apparently equate the two types of motions, perhaps because success on either yields an equally favorable result for their client.

In this case, the Lennar entities' motion relies on an affidavit by a Lennar official to contradict allegations in the Amended Complaint, and thus, the Court treats it as one for summary judgment.  Normally, where a party files a motion to dismiss that the Court instead treats as one for summary judgment, the Court is required to give the parties notice of its intentions and to permit the parties to supplement their briefing accordingly.  Fed. R. Civ. P. 12(b).  However, here, the Association responded to the motion as if it were one for summary judgment, attaching its own evidentiary material.  Thus, the Court treats the parties as having briefed the motion solely as one for summary judgment, and it evaluates it accordingly.

Motion to Dismiss or, in the alternative, for Summary Judgment (**# 44**), directed at the Amended

Third-Party Complaint.  In this motion, the Lennar entities and Genesee acknowledged the partial

curative effects of the Amended Third-Party Complaint, and purported to re-assert those

arguments from the initial motion that remained viable.  Thus, it appears that the Lennar entities'

initial motion has been rendered moot and superseded by the later motion.  The Court will

proceed to analyze only the later motion.

More recently, the Association moved to dismiss the Plaintiff's demand for exemplary

damages (**# 84**), stating that under Colorado law, a claim for exemplary damages may not be

included in an initial pleading, but rather, may only be asserted following discovery and

amendment of the pleading to assert the basis for the demand.  *Citing* C.R.S. § 13-21-102.5(a).

The Association also asserts that the Plaintiff cannot demonstrate facts sufficient to support a

*prima facie* case warranting such damages.

## JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## ANALYSIS

### A.  Standard of review

Summary judgment is appropriate only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

*Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569

(10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.

Supp.2d 1106 (D. Colo. 2002).  Whether there is a genuine dispute as to a material fact depends

upon whether the evidence presents a sufficient disagreement to require submission to a jury or

conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc.*, 210 F. 3d 1132 (10th Cir. 2000); *Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F. 2d 83, 85 (10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is also the party with the burden of proof at trial.  Here, the non-movant bears the burden of proof at trial and therefore must point to specific evidence establishing each challenged element of its claims. *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

The Association's motion to dismiss the Plaintiff's exemplary damage claim is brought pursuant to Fed. R. Civ. P. 12(c).  In reviewing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the Court applies the same standards as used in motions under Rule 12(b). *Ramirez v. Department of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000).  Specifically, the Court accepts all well-pleaded allegations in the Complaint as true, and construes them in the light most favorable to the Plaintiff. *Id.*; *Estes v. Wyoming Dept. of Transportation*, 302 F.2d 1200, 1203 (10th Cir. 2002).  The Complaint should not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Ramirez*, 222 F.3d at 1240.

### B.  Lennar entities' Motion for Summary Judgment

In many respects, the various arguments raised by the Lennar entities against many of the Association's claims revolve around a single assertion: that, as a matter of law, none of the Lennar entities may be held responsible for the actions of Genesee.  At trial, the burden is on the Association to establish liability of the Lennar entities or a particular entity.  The Lennar entities challenge the Association's ability to do so.  Thus it is up to the Association to make a prima facie showing of facts, which if construed most favorably to it, would allow judgment to enter in its favor.

The Association's response offers several different theories of the Lennar entities' liability.  On the one hand, it asserts "Lennar may have successor liability for work performed by [Genesee] or may have acquired [Genesee] prior to the time [Plaintiff] closed on her condominium.  These are all issues on which the Association is entitled to conduct discovery."  This response appears to be asserted pursuant to Fed. R. Civ. P. 56(f).

That rule provides that "Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had."  The Court should grant relief under Rule 56(f) liberally.  *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554-55 (10th Cir. 1993).  However, the mere assertion by the non-movant that more discovery is needed is insufficient to properly invoke Rule 56(f).  By its own terms, a request under Rule 56(f) must be made by an affidavit, stating reasons why the party is unable to present facts to oppose summary judgment.  That affidavit must do more than simply allege that

7

discovery has not been completed, or that specific facts are unavailable to the affiant. *Id.* at 1555. Rather, the affiant must show how the additional time requested will enable him to rebut the movant's allegations that no issue of fact exists. *Id.*   To do so, the affiant should identify the specific facts sought to be obtained and what steps the affiant has already made to obtain them. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992).   The Association did not support its response with any affidavit, much less one conforming to the requirements of Rule 56(f).   Thus, the naked assertion that discovery is necessary is insufficient to defeat the Third-Party Defendants' motion.

Next, the Association points out that Lennar Corporation acquired Genesee in 2002.[3] However, the Association has not responded directly to the Third-Party Defendants' assertion that, as a matter of law, parent corporations cannot be held vicariously liable for the actions of their subsidiaries. *Citing U.S. v. Bestfoods*, 524 U.S. 51, 61-62 (1998).   Although the Third-Party Defendants have relied entirely on dicta from the United States Supreme Court discussing a "general principle of corporate law," rather than illustrative caselaw from Colorado, that general principle is indeed one with which the Colorado courts have agreed.   In *H&H Distributors, Inc. v. BBC Intern. Inc.*, 812 P.2d 659, 663 (Colo. App. 1990), the court explained that a jury verdict against a parent corporation based on its subsidiary's breach of a purchase agreement could stand only if the jury also found that the subsidiary was an "alter ego" of the parent. *Citing New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp.*, 645 P.2d 868, 869 (Colo. App.1982). The alter ego doctrine exists to allow the disregard of nominally separate corporate forms, such as

---

[3]Note that the Association does not allege that any of the other Lennar entities have any connection to Genesee, other than through a shared corporate parent.

parent-subsidiary or corporation-shareholders, where a corporate entity is a "mere instrumentality" for the transaction of its owner's own affairs, and there is such a unity of interests between the entities that "the separate personalities of the corporation and the owners no longer exist." *Krystkowiak v. W.O. Brisben Co.*, 90 P.3d 859, 867 n. 7 (Colo. 2004); *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 490 (Colo. App. 2001). Among the numerous factors to be considered in making an alter ego determination are the extent to which one company owns the stock of the other; the extent to which management decisions are made by one corporation for the other, such as by common directors or officers; the extent to which the subsidiary has capitalization, assets, or business distinct from that of the parent; and the extent to which corporate formalities are observed. *Great Neck*, 37 P.3d at 490; *New Sheridan*, 645 P.2d at 869.

Here, the Association has only offered skeletal evidence with regard to a single factor: stock ownership. The record reflects that Lennar Corporation acquired Genesee in 2002, but it is silent as to the particulars of that transaction, *i.e.* whether the acquisition was complete or merely the accumulation of a controlling stake of Genesee's stock. The record does not offer any indication that Lennar Corporation makes decisions that affect the operation of Genesee, or whether the entities share common directors or officers. Nor is there any other evidence that Genesee is undercapitalized, or that its only meaningful business is conducted with Lennar Corporation. On the whole, even applying the deferential summary judgment standard in favor of the Association, the Court finds that the Association has failed to make a sufficient *prima facie* showing that Genesee is an alter ego of Lennar Corporation, such that Lennar Corporation can be held vicariously liable for Genesee' acts.

Finally, the Association contends that at least one of the Lennar entities participated directly in some of the conduct giving rise to the Association's claims.  The record indicates that two[4] persons involved in one of the inspections of the Plaintiff's unit identified themselves as being associated with "Genesee/Lennar," and that correspondence from Lennar's counsel appears to admit that "Lennar has caused extensive testing and inspections" at the development, and requests that Lennar be permitted to participate in further testing.  This evidence, scant and ambiguous as it may be,[5] is nevertheless sufficient, when taken in the light most favorable to the Association, to suggest that one or more of the Lennar entities actively participated in some of the allegedly insufficient inspections. The Third-Party Defendants reply to the Association's evidence by hypothesizing that the Lennar personnel participating in the inspection were "loaned" to Genesee, but adduce no evidence in support of this contention.

Thus, the record, construed in the Association's favor, reveals that representatives from an undifferentiated Lennar entity negligently failed to conduct a proper inspection of the common area.  Although this evidence might be sufficient to support a negligence or contribution claim against the particular Lennar entity that these individuals purported to represent, the Association offers no evidence which identifies the Lennar entity or entities participating in the inspection.

---

[4]The Third-Party Defendants argue that only one individual represented himself as being from "Genesee/Lennar."  However, a second individual signed the form as being employed by a company called "A.G. Wessenaar, Inc.," but noted in another column that he was "representing" "Genesee/Lennar."  The fact that this individual was not employed directly by the Lennar entities is not dispositive, as negligence by one of the Lennar entities' retained agents in inspecting the property would be chargeable to the entity itself.

[5]The Third-Party Defendants argue that the inspection form is not competent evidence, being neither generated by Lennar nor established as a business record.  The fact remains, however, that statements by persons that they represent Lennar could amount to admissions by Lennar under Fed. R. Evid. 801(d)(2)(D).

Although the Court considers the evidence in the light most favorable to the Association at this

stage, the Association has the burden of coming forward with sufficient facts to demonstrate a

*prima facie* case against each of the Lennar entities it has sued. The ambiguous assertion that an

individual represented "Lennar" is insufficient to do. A factfinder who concluded that the simple

notation of "Lennar" on the inspection form meant Lennar Homes, Inc. as opposed to Lennar

Corporation, or that it meant Lennar Colorado, LLC and not Lennar Family of Builders Group,

Inc., would be engaging in mere speculation as to who "Lennar" is. Without more evidence

identifying the particular Lennar entity or entities that participated in the inspection, all of the

Lennar entities are entitled to summary judgment on the contribution and negligence claims.[6]

Turning to the indemnity claim, the Third-Party Defendants argue that Colorado has

abolished the doctrine of implied indemnity, and thus, in the absence of a contractual promise of

indemnification, the Association's claim for indemnity must be dismissed. They are correct in

asserting that Colorado's statutory adoption of comparative fault has abolished the notion that a

tortfeasor of secondary fault may demand indemnification from the tortfeasor primarily

responsible for the injury. *Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1295, 1299 (Colo.

1986). The Association argues, however, that *Brochner* applies only to indemnification claims as

among joint tortfeasors, not, as it contends is the case here, where one party (the Association) is

not a tortfeasor at all, but is merely alleged to be vicariously liable for another's torts. *Citing*

*Unigard Mut. Ins. Co. v. Mission Ins. Co,.*, 907 P.2d 94, 98 (Colo. App. 1994). However, as the

---

[6]There is undisputed evidence that Genesee participated in the inspection, and thus,
Genesee's failure to use reasonable care during that inspection (among other alleged wrongful
acts by Genesee) permit the Association to assert negligence and contribution claims against
Genesee.

Third-Party Defendants argue in reply, the claim against the Association by the Plaintiff is not solely based on vicarious liability; the Plaintiff asserts that the Association was itself negligent in its actions. Thus, to the extent the Association is liable to the Plaintiff in tort – a necessary precondition to the Association then seeking indemnification from the Third-Party Defendants – the Association is a tortfeasor. This renders *Unigard*-type indemnification unavailable. Because the Association cannot obtain full indemnity from a fellow tortfeasor under *Brochner,* its only recourse is in contribution. Thus, all of the Third-Party Defendants are entitled to summary judgment on the Association's indemnification claim.

Finally, the Third-Party Defendants seek summary judgment on the Association's claim of breach of warranty. The precise contours of this claim by the Association remain elusive despite the Association's briefing. Because the Court has already disposed of any argument that Lennar entities are vicariously responsible for warranties given by Genesee, it appears to be undisputed that no Lennar entity ever expressly or impliedly granted a warranty to the Association. Thus, there does not appear to be any basis for a breach of warranty claim by the Association against any entity other than Genesee.

In its response, the Association floats several theories. First, it states that "Lennar conducted an extensive inspection of [the Plaintiff's] condominium and was clearly involved with the property in question." *Docket* # 38 at 8. For the reasons stated above, the absence of any evidence that a particular Lennar entity participated in the inspection disposes of this argument. Moreover, even if the Lennar entities participated in an inspection, the Association adduces no evidence that the Lennar entities gave any warranty regarding the quality of their investigation.

12

Next, the Association contends that "Lennar also assumed all warranty obligations at the Condominiums at the Boulders." *Id.* This assertion is not supported by any citation to evidence in the record, and the precise basis for the Association's contention on this point is unclear. The Court infers from the Association's briefing that this assumption of warranty obligations allegedly arises from Lennar Corporation's acquisition of Genesee. However, for the reasons explained above, absent sufficient evidence of an alter ego relationship (or an express assumption of liabilities), Lennar Corporation cannot be held vicariously liable for promises made by Genesee.

Finally, the Association argues that "Colorado law has long held that a homeowners' association has standing to assert a claim for breach of warranties for damage to areas under common ownership." *Citing Villa Sierra Condominium Assn. v. Field Corp.*, 787 P.2d 661, 667 (Colo. App. 1990). The Association's reliance on *Villa Sierra* is misplaced. In *Villa Sierra*, the court held that a homeowners' association had standing to "maintain an action on behalf of its members" if certain criteria were met. Here, the Association is not purporting to assert a breach of warranty claim against the Third-Party Defendants on behalf of the Plaintiff (nor purporting to assert that it has the Plaintiff's permission to do so). Rather, the Association appears to assert a direct claim based on warranties given to it, rather than to its members. The Association has offered no evidence of any such warranty, however.

The Association is correct that C.R.S. § 38-33.3-302(1)(d) empowers homeowners' associations to commence litigation in their own names on "matters affecting the common interest community." This provision would appear to permit the Association to sue to enforce a warranty given by any of the Third-Party Defendants to the Association governing the adequacy of construction of common areas within the development. However, the Association, faced with a

13

motion for summary judgment challenging its ability to demonstrate the existence of such a

warranty, has failed to offer facts that establish that any of the Third-Party Defendants, including

Genesee, provided such a warranty to the Association.  The Association's assertion in the

Amended Third-Party Complaint that such a warranty was given is insufficient to carry its burden

on summary judgment of pointing to <u>evidence</u> in the record.  *BancOklahoma Mort. Corp. v.

Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (allegations in pleadings are not

sufficient to overcome summary judgment).

Thus, in the absence of evidence establishing the existence of a warranty given by any

Third-Party Defendants regarding construction of common areas, the Third-Party Defendants are

entitled to summary judgment on the breach of warranty claim.

### C.  The Association's Motion to Dismiss the Plaintiff's Exemplary Damages Claim

C.R.S. § 13-21-102(1.5)(a) provides that "a claim for exemplary damages . . . may not be

included in any initial claim for relief.  A claim for exemplary damages . . . may be allowed by

amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff

established *prima facie* proof of a triable issue [of exemplary damages]."  Noting that the Plaintiff

requested exemplary damages in her initial Complaint, the Association seeks dismissal of that

claim under the Colorado statute.  The Plaintiff argues that, under the *Erie* doctrine, the Colorado

statute is procedural, and thus, not applicable in diversity actions such as this.

In an unpublished opinion, this Court has extensively analyzed effect of the *Erie* doctrine

on a similar Colorado law relating to claims of exemplary damages in medical malpractice cases,

concluding that the Court should give effect to the Colorado statute.  *Jones v. Krautheim*, D.

Colo. Case No. 01-MK-2150 (PAC) (June 25, 2002) (copy attached).  Accordingly, the Court

14

dismisses the Plaintiff's claim for exemplary damages without prejudice at this time. However, illustrating the adage that one should be careful what one wishes for, the Court advises the parties that it, if the Plaintiff's case-in-chief at trial demonstrates a *prima facie* basis for awarding exemplary damages, the Court will entertain an oral motion by the Plaintiff to amend her Complaint to request such damages, and will evaluate any claim of surprise or prejudice by the Association in the appropriate light.

## CONCLUSION

For the foregoing reasons, the Lennar entities Motion to Dismiss, or, in the alternative, for Summary Judgment **(# 30)** is **DENIED AS MOOT**. The Third-Party Defendants' Motion to Dismiss, or, in the alternative, for Summary Judgment **(# 44)** is **GRANTED IN PART**, insofar as the Lennar entities are entitled to summary judgment on all claims asserted against them by the Association, and Defendant Genesee is entitled to summary judgment on the indemnification and breach of warranty claims asserted by the Association, and **DENIED IN PART**, insofar as the Association has demonstrated a genuine issue of material fact warranting trial on its contribution and negligence claims asserted against Defendant Genesee. The caption of this case to be used on future pleadings is **AMENDED** to omit all of the Lennar entities. The Association's Motion to

15

Dismiss the Plaintiff's Claim for Exemplary Damages **(# 84)** is **GRANTED**, insofar as the

Plaintiff's claim for exemplary damages is **DISMISSED** without prejudice.

　　　　Dated this 13th day of February, 2006

　　　　　　　　　　　**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

– ATTACHMENT BEGINS –

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 01-MK-2150 (PAC)

DONNA C. JONES,

        Plaintiff,

v.

MARK KRAUTHEIM, M.D.,

        Defendant.

> FILED
> UNITED STATES DISTRICT COURT
> DENVER, COLORADO
> 06/25/02
> JAMES R. MANSPEAKER,
> CLERK

---

## ORDER REGARDING MOTION TO DISMISS AND MEMORANDUM OPINION

---

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss Punitive Damage Claim Under C.R.S. § 13-64-302.5 (Motion) and the Plaintiff's Response thereto. The Court has considered the parties' written and oral legal arguments and based thereon,

**FINDS** and **CONCLUDES** as follows:

## I.  JURISDICTION

This is a diversity action in which this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff alleges medical malpractice and requests a judgment awarding medical expenses, damages for pain and suffering and punitive damages. In the Motion, the Defendant contends that Plaintiff's prayer for punitive damages is untimely pursuant to Colorado state law embodied in C.R.S. § 13-64-302.5 and therefore must be dismissed.[7] The Plaintiff responds that such statute should not apply in a federal diversity action such as this because it conflicts with the Federal Rules of Civil Procedure.

---

[7] Presumably, the Defendant seeks to have the exemplary damage portion of the prayer stricken.

17

### III.  ISSUE PRESENTED

Section 13-64-302.5 of the Colorado Revised Statutes addresses claims for exemplary (punitive) damage awards sought against health care professionals.  Subsection (3) prohibits a plaintiff from asserting a claim for exemplary damages in the initial complaint.  The subsection authorizes amendment of the complaint after substantial completion of discovery and upon a showing of *prima facie* proof of a triable issue.  The sole issue presented by the Motion is whether the restrictions of C.R.S. § 13-64-302.5(3) are applicable in a federal diversity action.  This issue is one of first impression.

### IV.  ANALYSIS

C.R.S. § 13-64-302.5(3) provides in pertinent part:

> [i]n any civil action or arbitration proceeding alleging negligence against a
> health care professional, exemplary damages may not be included in any initial
> claim for relief.  A claim for such exemplary damages may be asserted by
> amendment to the pleadings only after the substantial completion of discovery
> and only after the plaintiff establishes *prima facie* proof of a triable issue.

Ordinarily, federal courts sitting in diversity cases apply federal procedural law and state substantive law.  *Hanna v. Plumer*, 380 U.S. 460 (1965); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996).  However, sometimes the line between procedural and substantive law is difficult to draw.  The Supreme Court has struggled for years to delineate the difference.  *See, Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938);  *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945); *Byrd v. Blueride Rural Elec. Coop.*, 356 U.S. 525 (1958); *Hanna v. Plumer*, 380 U.S. 460 (1965).[8]

---

[8] Following *Erie*, in *Guaranty Trust Co.*, the U.S. Supreme Court adopted a "outcome determinative" test, which required an analysis of whether the outcome in federal court litigation would be substantially the same as if the matter had been tried in state court.  Then, recognizing that even purely procedural laws can affect outcome, the Court retreated from the *Guaranty Trust Co.* test in *Byrd,* directing that federal courts should balance the federal interest in a uniform process against the state interest in uniformity of result.  Most recently, in *Hanna*, the Court adopted the two-part test which is applied here.

In *Hanna v. Plumer*, the Supreme Court articulated a two-part test for deciding whether state law with a procedural impact should apply in federal diversity actions.  The *Hanna* test requires a court to first determine whether the state law in question directly conflicts with a federal rule of civil procedure.  If there is a direct conflict, the federal procedural rule applies and the state provision does not.[9]  If there is no direct conflict between the state statute and a federal rule, then a court must consider *Erie's* twin goals of discouraging forum shopping and avoiding inequitable administration of the law.  *Walker*, 466 U.S. at 752-53; *Hanna*, 380 U.S. at 468.

Using this approach, I conclude that the provisions of C.R.S. § 13-64-302.5(3) do not directly conflict with any particular Federal Rule of Civil Procedure or the Federal Rules as a whole.  Furthermore, the twin aims of *Erie* are best satisfied by applying the Colorado statute.

### A.     Interplay Between C.R.S. § 13-64-302.5(3) and the Federal Rules of Civil Procedure.

Using the *Hanna* approach, the first question posed is whether the state statute conflicts with any federal procedural rule.  As many courts have noted, this is not a question of whether the federal rules and state law overlap.  It is, instead, a question of whether a federal rule directly collides with state law, leaving no room for the state law's operation.  *See*, *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1 (1987) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)).  In this context, federal courts have consistently interpreted the federal rules with a sensitivity to important state interests and policies.  *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428 n. 7 (1996).

Section 13-64-302.5(3) restricts a plaintiff's right to request exemplary damages against health care providers in two ways.  First, the statute governs the timing of a plaintiff's request for an exemplary damage award.  Such request may not be made in the initial complaint; it may be asserted only by amendment after the completion of discovery.  Second, the statute conditions any such request upon a plaintiff's showing of *prima facie* proof of a triable issue.  The Plaintiff in this matter contends that these provisions directly conflict with Rules 8, 9, 15 and 56 of the Federal Rules of Civil Procedure.

---

[9]   The one exception to this general rule is where the federal rule violates a constitutional principle.  *See, Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980); *Hanna v. Plumer*, 380 U.S. 460, 469-71 (1965).

Although neither the parties nor the Court have found any reported decision that addresses the interplay between C.R.S. § 13-64-302.5(3) and the Federal Rules of Civil Procedure, a number of federal courts have considered the applicability of state statutes regulating a plaintiff's right to request an award of exemplary or punitive damages.  District courts in Idaho, North Dakota, Minnesota and Florida have concluded that such state statutes do not conflict with the Federal Rules of Civil Procedure.[10]  District courts in Kansas, Illinois, Oregon, California and Florida have found conflicts between such statutes and the Federal Rules, but they do not agree as to which rule is implicated.[11]  The only circuit court to have addressed the issue is the Eleventh Circuit which did so in *Cohen v. Office Depot, Inc.*, 184 F.3d 1292 (1999), *vacated in part on other grounds*, 204 F.3d 1069 (11th Cir. 1999), *cert. denied*, 531 U.S. 957 (2000).  In *Cohen,* the Eleventh Circuit Court of Appeals resolved the split in authority among the Florida district courts, holding that a Florida statute regulating exemplary damage claims conflicted with the provisions of Rule 8(a)(3), but not with Rules 8(a)(2) or 9(g).

Characterization of this spectrum of opinions into majority and minority viewpoints, as suggested by at least one commentator,[12] is overly simplistic.  Each state statute regulating the assertion of exemplary damages is

---

[10]   *See, Windsor v. Guarantee Trust Life Ins Co.*, 684 F. Supp. 630, 639 (D. Idaho 1988); *Nereson v. Zurich Ins Co.*, 1992 WL 212233 at *2 (D.N.D. August 20, 1992); *Fournier v. Marigold Foods, Inc.*, 678 F. Supp. 1420, 1422 (D. Minn. 1988); *Engele v. Indep. School Dist. No. 91*, 846 F.Supp. 760, 768 (D. Minn. 1990); *Minnesota Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F.Supp. 506, 519 (D. Minn.), *aff'd.*, 41 F. 3d 1242 (8th Cir. 1994); *Zeelan Indus., Inc. v. De Zeeuw*, 706 F.Supp. 702, 705 (D. Minn. 1989); *Northwest Airlines, Inc. v. American Airlines, Inc.*, 870 F. Supp. 1499, 1502 (D. Minn. 1994); *Daines v. City of Mankato*, 754 F.Supp. 681, 704 n. 9 (D. Minn. 1990); *Olson v. Snap Products, Inc.*, 29 F. Supp.2d 1027, 1034 (D. Minn. 1998); *Laffey v. Indep. School Dist. 625*, 806 F.Supp. 1390, 1406 (D. Minn. 1992), *aff'd.*, 994 F. 2d 843 (8th Cir. 1993), *cert. denied,* 510 U.S. 1054 (1994); *Teel v. United Techs. Pratt & Whitney*, 953 F.Supp. 1538-41(S.D. Fla. 1997); *Sanders v. Mayor's Jewelers, Inc.*, 942 F.Supp. 571, 575 (S.D. Fla. 1996); *Al-Site Corp. v. VSI Int'l, Inc.*, 842 F.Supp. 507, 512 (S.D. Fla. 1993).

[11]   *See, Schneulle v. C & C Auto Sales Inc.,* 99 F.Supp. 2d 1294, 1299 (D. Kan. 2000) (conflict with FED.R.CIV.P. 9(g)); *Pruett v. Erickson Air-Crane Co.*, 183 FRD 248, 250-52 (D. Or. 1998) (conflict with FED.R.CIV.P. 9(g)); *Jackson v. Eastbay Hospital*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997) (conflict with FED.R.CIV.P. 8(a)(3)); *Wortheim v. Gilette Co.*, 774 F.Supp. 514, 516-17 (N.D. Ill. 1991) (conflict with FED.R.CIV.P. 8(a)(3)); *Alexander v. University/Gainesville Healthcare Ctr., Inc.*, 17 F.Supp. 1291, 1292 (N.D. Fla. 1998) (conflicts with FED.R.CIV.P. 8(a)); *Tutor Time Childcare Sys., Inc. v. Franks Inv Group, Inc.,* 966 F.Supp. 1188, 1190 (S.D. Fla. 1997) (conflicts with both FED.R.CIV.P. 8(a) and 9(g)); *State of Wisconsin Inv. Bd. v. Plantation Square Assocs., Ltd.,* 761 F.Supp. 1569, 1573-80 (S.D. Fla. 1991) (conflicts with FED.R.CIV.P. 8(a)); *Citron v. Armstrong World Indus., Inc.*, 721 F.Supp. 1259, 1261-62 (S.D. Fla. 1989) (conflicts with FED.R.CIV.P. 9(g)).

[12]   *See,* <u>Pleading Punitive Damages: An *Erie* Dilemma</u>. 58– FEB Bench & B. Minn. 17 (February, 2001).

unique and many differ in purpose or effect from the Colorado statute. Some statutes are applicable to all actions in which exemplary damages are asserted.[13] In contrast, the Colorado statute applies only in actions brought against health care professionals. Some statutes were enacted with the purpose of limiting the amount or assertion of exemplary damages. Although no legislative history is cited by the parties, the Defendant persuasively argues that the effect, if not the purpose, of the Colorado statute is somewhat narrower. Its effect is to delay the assertion of exemplary damages thereby allowing defendant health care professionals to benefit from the representation of attorneys paid by their professional negligence insurance through the discovery phase. One statute is significantly more detailed than the Colorado statute. It specifies that particular hearings must be conducted, findings made, and discovery limited.[14] Although most of the statutes require that some showing must be made in order to amend a complaint, two statutes require the plaintiff to establish more than a *prima facie* showing to support the amendment.[15]

In addition, the judicial analysis of the applicability of such statutes in federal diversity actions is not consistent. One decision offers little or no analysis.[16] Rather than applying the *Hanna* two-part test, one opinion assesses whether the state law is substantive or procedural on an *ad hoc* basis[17] and others focus upon whether the state law will affect the outcome of the litigation.[18] Interestingly, two decisions concluding that the state law must

---

[13] IDAHO CODE § 6-1604, enacted as part of Idaho's tort reform scheme, applies in all civil actions as do FLA.STAT. § 768.72 and 735 Ill.Comp.Stat. ¶ 5/2-604.1(West 1993).

[14] OR.REV.STAT. § 18.535 specifies that affidavits with admissible evidence must be submitted with a motion to amend the complaint, the court must conduct a hearing within thirty days after the motion is filed and served and issue a decision within ten days after hearing. If no decision is rendered within ten days, the motion is deemed denied.

[15] Section 32-03.2-11 of the North Dakota Century Code requires affidavits to establish the basis for the proposed claim as does MINN. STAT. § 549.191. CAL. CODE CIV.PROC.§ 425.13 requires a showing of substantial probability of prevailing on the claim.

[16] *See, Native American Services, Inc. v. Givens*, 213 F. 3d 642 (9th Cir. (Idaho) (unpublished)).

[17] *See, Schnuelle v. C & C Auto Sales*, 99 F. Supp. 2d 1294 (D. Kan. 2000).

[18] *See, Jackson v. East Bay Hospital*, 980 F. Supp. 1341 (N.D.Cal. 1997); *Wortheim v. Gillette Co.,* 774 F. Supp. 514 (N.D. Ill. E. D. 1991).

be overridden by the federal rules also conclude that application of the federal rules will result in the same outcome as the state law, which suggests that there is no conflict or collision.[19]

In light of these variances, and in the absence of binding authority, I am guided by the reasoning of the Tenth Circuit Court of Appeals in *Trierweiler v. Croxton and Thrench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996), a case analyzing the applicability of a different Colorado statute.  In *Trierweiler,* a diversity action, the Tenth Circuit Court of Appeals considered the applicability of C.R.S. § 13-20-602, which requires that within sixty days after the filing of a complaint alleging professional negligence, a plaintiff file an expert report certifying that the claims have substantial justification.  Failure to timely file the report requires dismissal of the action.

Applying the *Hanna* two-part test, the Tenth Circuit first considered whether the statute conflicted with Rule 11 of the Federal Rules of Civil Procedure.  The Tenth Circuit reasoned that FED.R.CIV.P. 11 and § 13-20-602 demonstrated a common "intent to weed unjustifiable claims out of the system".  *Trierweiler,* 90 F.3d at 1540. Due to their similarity in purpose and the limited application of § 13-20-602 to professional negligence cases, the statute and Rule 11 could "exist side-by-side, . . . each controlling its own intended sphere of coverage without conflict".  *Trierweiler,* 90 F.3d at 1540.

The court then considered the policies underlying the *Erie* family of cases, observing that in diversity cases, the outcome of the litigation in the federal court should be substantially the same as it would be if tried in a state court.  *Guaranty Trust*, 326 U.S. at 109.  Implementation of the dual policies of *Erie* (discouraging forum shopping and avoiding inequitable administration of the laws) was best served by applying the Colorado certificate of review statute in a federal diversity action because if the Colorado statute was not applied, a plaintiff alleging professional negligence would be likely to use the federal forum rather than the state forum, thereby leading to the inequitable result of conferring a penalty on state plaintiffs as compared to those proceeding in federal court.

Stepping back from the practical result, the Tenth Circuit also noted that the policy underlying the Colorado statute was "bound up with [state created] rights and obligations."  *Trieweiler,* 90 F.3d at 1541, citing *Byrd,* 356 U.S. at 535.  The court found that the Colorado legislature intended to expedite the litigation process in

---

[19] *See, Wortheim v. Gillette Co.,* 774 F.Supp. at 516; *Jackson v. East Bay Hospital*, 980 F. Supp. 1341 (N.D. Ca. 1997).

cases filed against licensed professionals and to prevent the filing of frivolous actions. This manifested a substantive decision which federal courts should apply to professional negligence actions brought under diversity jurisdiction just as it would in actions brought in Colorado state courts. *Trierweiler,* 90 F.3d at 1541.

In this matter, the Plaintiff alleges a number of conflicts between C.R.S. § 13-64-302.5(3) and individual Federal Rules of Civil Procedure. She first argues that the Colorado statute conflicts with Federal Rule of Civil Procedure 8, subsections (a)(2) and (a)(3).

Rule 8(a) states, "a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." This is known as the "short and plain statement" rule which supercedes traditional pleading formalities. The rule requires only that a complaint give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. I agree with the reasoning of the Eleventh Circuit in *Cohen* that a request for exemplary damages is not a "claim" within the meaning of Rule 8(a)(2); it is only a form of the relief prayed for as part of the claim. The facts underlying the claim can be stated in the initial complaint thereby satisfying both Rule 8(a)(2) and the state statute. Thus, there is no conflict between § 13-64-302.5(3) and Rule 8(a)(2).

The more relevant portion of Rule 8 is subsection (a)(3) which requires that a demand for judgment identify the remedy and the parties against whom relief is sought. Clearly, § 13-64-302.5(3) prevents a plaintiff from including a prayer for exemplary damages in the initial complaint and in any amended complaint without leave of court. This would create an obvious conflict between the statute and the rule were it not for the fact that Rule 8 imposes no timing requirement. In practical use, Rule 8 does not and cannot operate in isolation, but instead must be considered in conjunction with Rule 15, which anticipates liberal amendment of pleadings throughout the course of the litigation and, ultimately, to conform to the evidence and issues raised by the parties.[20] So long as a plaintiff has the opportunity to amend the initial complaint to comply with Rule 8(a)(3) before the issues are ultimately tried, there is no practical conflict between § 13-64-302.5(3) and FED.R.CIV.P. 8(a)(3).

---

[20] *See, Monod v. Futura, Inc.,* 415 F.2d 1170 (10th Cir. 1969).

The Plaintiff also argues that there is a conflict between C.R.S. § 13-64-302.5(3) and Rule 9(g). Rule 9(g) requires that when items of special damage are claimed, they be specifically stated. As with Rule 8, Rule 9 contains no timing requirement and must be construed in conjunction with Rule 15. So long as a plaintiff can amend pleadings to state special damages in conformance with Rule 9(g) before the issues are tried, there is no practical conflict between the Colorado statute and the federal rules.[21]

The Plaintiff finally argues that there is a conflict between the Colorado statute and Rules 15, 26 and 56. No specifics have been argued and I can ascertain no apparent conflict. Indeed, the process specified in § 13-64-302.5(3) is consistent with each of these rules. Rule 15 is expressly consistent with § 13-64-302.5(3) because it authorizes amendment by motion after a responsive pleading has been filed with leave of court. *Ramirez v. Oklahoma Dept of Mental Health*, 41 F.3d 584, 586-87 (10th Cir. 1994); *Commissioner of Internal Revenue v. Finley*, 265 F.2d 885 (10th Cir. 1959), *cert. denied*, 361 U.S. 834 (1959). The scope of discovery under Rule 26 is not limited by the Colorado statute. Because basic facts can and should be stated in the initial complaint, all facts relevant to a request for relief of exemplary damages would fall within permissible discovery under Rule 26. Nor is Rule 56 implicated. The filing of dispositive motions routinely occurs after the close of discovery and therefore would occur after an appropriate motion to amend is offered. In the event a motion is made for which the respondent requires additional discovery, Rule 56(e) authorizes such discovery prior to a responsive pleading being filed.

Finally, although not raised by the Plaintiff, I note that the purpose and the function of § 13-64-302.5(3) is consistent with the purpose and function of Rules 11 and 16. Like Rules 11 and 16, the effect of § 13-64-302.5(3) is to simplify litigation by preventing the waste of time and resources on frivolous claims. In addition, like the Colorado certification statute addressed in *Trierweiler*, § 13-64-302.5(3) is narrower in its application than any of the Federal Rules of Civil Procedure, applying only in professional negligence actions brought against health care providers. Because § 13-64-302.5(3) falls within the scope of the applicable federal rules and its purpose is

---

[21] It is interesting to note that notwithstanding the applicability of § 13-64-302.5 in state court cases, the provisions of COLO.R.CIV.P. 8, 9 and 15 are essentially the same as their federal counterparts. This further suggests operational consistency between the procedural rules and the statute.

consistent with them, I see no "direct collision" between § 13-64-302.5(3) and any specific federal rule or with the Federal Rules of Civil Procedure as a whole.

      **B.**      <u>**Satisfaction of the Twin Aims of the *Erie* Doctrine**</u>.

In the absence of a direct conflict between the Federal Rules of Civil Procedure and § 13-64-302.5(3), the second analytical step is to apply the "outcome-determinative test in light of the twin aims of *Erie*." *See Walker*, 446 U.S. at 752-53; *Trierweiler*, 90 F.3d at 1540. As noted earlier, the purpose of the *Erie* doctrine is to insure that the outcome of the litigation in the federal court is substantively the same as if the matter was tried in a state court. Thus the ultimate decision of whether to apply § 13-64-302.5(3) must be consistent with the dual policies of *Erie* – that of discouraging forum shopping and avoiding inequitable administration of the laws.

In enacting C.R.S. § 13-64-302, the Colorado legislature specifically articulated the public policy interests it intended the subsequent provisions to serve:

> The general assembly hereby finds, determines, and declares that it is in the
> public interest to establish a consistent and uniformly applicable standard for
> the determination, amount, imposition, and distribution of exemplary monetary
> damages arising from civil actions and arbitration proceedings alleging
> professional negligence in the practice of medicine. It is the intent of the
> general assembly that any such exemplary damages serve the public purposes of
> deterring negligent acts and where appropriate provide a form of punishment
> that is in addition to the disciplinary and licensing sanctions available to the
> state board of medical examiners.

This statement articulates an overarching purpose of setting uniform standards for determination, amount and imposition of exemplary damages in actions against health care providers. The Defendant notes that awards of exemplary damages are rarely covered by professional liability insurance and that insurance carriers often are not obligated to defend against such requests. When exemplary damages are asserted early in litigation, the health care defendant may be required to retain private counsel or to incur additional legal fees in conjunction with such issues. This burdens such defendant with additional cost, changes the settlement dynamics and therefore affects

the determination, amount and imposition of exemplary damages.  The Colorado statute requires a sound factual basis for the assertion of exemplary damage claims, enabling the health care defendant to rely upon representation by its, his or her insurance carrier for the initial stages of the litigation and delaying settlement of such claims until facts have been shown to support them.

If C.R.S. § 13-64-302.5(3) is not applied in federal diversity actions, the legislature's objective of consistency in the determination, amount and imposition of exemplary damages against all health care providers will not be achieved.  Plaintiffs not required to comply with § 13-64-302.5(3) in diversity actions will likely prefer the federal court to state court because the exemplary damages can be raised early in the litigation without factual development.  Health care defendants in federal diversity actions may be disadvantaged over those named in actions brought in state court either because they must obtain private representation to address exemplary damage issues early in the litigation or because they must consider early settlement to avoid such expenses.  Such result, even in a few cases, defeats the objective of the Colorado statute, increases the danger of forum shopping and results in inequitable application of the law.

## V.  CONCLUSION

Having concluded that there is no direct conflict between the Federal Rules of Civil Procedure and C.R.S. § 13-64-302.5(3), I further conclude that failure to apply such statute would contravene an important state interest, tend to promote forum shopping and result in inequitable administration of the laws.

**IT IS THEREFORE ORDERED** that Defendant's Motion is hereby **GRANTED,** with modification. Plaintiff's prayer for punitive damages is **STRICKEN**.  An answer shall be filed **within ten days** of the date of this Order.

DATED this 25th day of June, 2002.

BY THE COURT:

Marcia S. Krieger
United States District Court

## – ATTACHMENT ENDS –

-26-