IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-02000-MSK-MEH

LEESA WITT,

        Plaintiff,

v.

CONDOMINIUMS AT THE BOULDERS ASSOCIATION, and
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,

        Defendants;

CONDOMINIUMS AT THE BOULDERS ASSOCIATION,

        Third-Party Plaintiffs,

v.

GENESEE COMMUNITIES VII, LLC,

        Third-Party Defendant.

_____

## OPINION AND ORDER GRANTING, IN PART, MOTIONS FOR SUMMARY JUDGMENT AND DENYING MOTIONS *IN LIMINE*

_____

**THIS MATTER** comes before the Court pursuant to Defendant Condominiums at the

Boulders Association's ("the Association") Motion for Summary Judgment **(# 140)**, the Plaintiff's

response **(# 148)**, and the Association's reply[1] **(# 161)**; Defendant Travelers Property Casualty

Insurance Company's ("Travelers") Motion for Summary Judgment **(# 141)**, the Plaintiff's

_____

[1]The Association's reply is docketed as a "Brief in Opposition," not a reply brief.

1

response (**# 149**), and Travelers' reply (**# 150**); Third-Party Defendant Genesee Communities VII,

LLC's ("Genesee") Motion *In Limine* to Exclude Evidence Concerning County Assessor's

Valuation of Property (**# 156**) (in which the Association joins[2] (**# 159**)), the Plaintiff's response (**# 166**), and Genesee's reply (**# 173**); Traveler's Motion *In Limine* to Exclude Plaintiff's

Undisclosed Trial Witnesses (**# 157**) (in which the Association joins (**# 160**)), to which no

response was filed by the Plaintiff; and the Plaintiff's Motion for Costs and Fees (**#161**), the

Association's response (**# 169**), Travelers' response (**# 170**), and the Plaintiff's reply (**# 171**)

## FACTS

In summary,[3] on or about July 30, 2002, the Plaintiff purchased a condominium built by

Genesee, and managed by Defendant Association.  In or about March 2003, the Plaintiff noticed

an unpleasant odor, which she describes as "sewer gas," inside her home.  She complained of the

odor to Genesee, and over a period of time, several individuals inspected the unit, sometimes

locating and repairing defects that might have been the source of the odor, other times finding no

odor to exist.  Despite all attempts at repair, the Plaintiff continued to notice the odor, and

eventually, Genesee refused to investigate the matter further.

In September 2003, the Plaintiff filed a claim with Defendant Travelers, the Association's

insurer.  Travelers conducted additional inspections and tests of the property, but could not

---

[2]Joining in a motion is not a mechanism contemplated by the Federal Rules of Civil Procedure or the District of Colorado's Local Rules.  As will be seen herein, "joining" in a motion creates a variety of administrative and legal obstacles to the Court in monitoring the status of and resolving motions.  For future reference, all parties are advised that "joinder" in motions will not be permitted.  Each party must move separately for the relief it seeks, although it may, where appropriate, adopt the arguments of another party by reference.

[3]More detailed recitations of the relevant facts and the motions *in limine* are included in the relevant portions of the analysis, *infra*.

discern the source of the odor.  In that same month, the Plaintiff moved out of the unit, believing that the source of the odor was causing her to suffer health problems.

The Plaintiff commenced this diversity action against the Association and Travelers, asserting seven claims: (i) breach of contract, apparently referring to both the condominium agreement (as to the Association) and breach of the insurance contract as between the Association and Travelers on a third-party beneficiary theory (as to Travelers); (ii) battery, apparently asserted only against the Association, in that it purposefully has exposed and continues to expose her to sewer gas; (iii) assault, on the same terms as the battery claim; (iv) breach of fiduciary duty, against both the Association and Travelers as the Association's agent; (v) negligent infliction of emotional distress, apparently as against both Defendants; (vi) breach of the duty of good faith, based upon Traveler's failure to comply with its policy with the Association, and, the Court assumes, upon the Association's breach of its contract; (vii) civil conspiracy, in that the Association and Travelers conspired with each other and with Genesee to breach the condominium agreement and insurance policy.

Both Defendants filed motions for summary judgment.  The Association's motion **(# 140)** argues that: (i) with regard to the Plaintiff's claim for breach of contract, the Plaintiff cannot show that the Association failed to perform its duties under the contract, or that she has suffered any damages as a result of any breach; (ii) with regard to the claims of battery and assault, the Plaintiff cannot prove that the association caused a harmful or offensive contact with the Plaintiff or the apprehension of such contact, and that any such contact or apprehension was intended by the Association; (iii) with regard to the breach of fiduciary duty claim, the Plaintiff cannot show that the Association breached any duty or that she suffered any injury as a result of any breach; (iv)

3

with regard to the negligent infliction of emotional distress claim, the Plaintiff cannot prove that the Association was negligent, that its negligence created an unreasonable risk of harm, or that it caused the Plaintiff to fear for her safety; (v) on the breach of the duty of good faith claim, the Plaintiff cannot show any breach of the duty of good faith; and (vi) on the civil conspiracy claim, the Plaintiff cannot prove any of the elements of that claim.

Traveler's motion (**# 141**) argues that: (i) as to the breach of contract claim, the Plaintiff cannot prove the existence of a contract between herself and Travelers, or that any such contract was breached by Travelers; (ii) as to the battery and assault claims, the Plaintiff cannot prove that Travelers caused and intended to cause any harmful contact or apprehension in the Plaintiff; (iii) as to the breach of fiduciary duty claim, the Plaintiff cannot prove the existence of any fiduciary relationship between herself and Travelers; (iv) as to the negligent infliction of emotional distress claim, the Plaintiff cannot prove that Travelers acted negligently, that it caused an unreasonable risk of harm to the Plaintiff, or that the Plaintiff suffered any fear for her safety; (v)  as to the breach of the duty of good faith claim, the Plaintiff cannot show the existence of a contract with Travelers giving rise to any duty of good faith; and (vi) as to the civil conspiracy claim, the Plaintiff cannot prove any of the elements of that claim.

## ANALYSIS

### A.  Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The motions by the Association and Travelers are identical with regard to the claims on which summary judgment is sought, and largely similar with regard to the elements the Plaintiff is allegedly unable to prove on each claim.  The Court will analyze the motions on a claim-by-claim basis, rather than as separate motions, and will differentiate between the two motions only where the nature of the Plaintiff's claim or the relevant evidence differs as against each Defendant.

**B.  Breach of contract claim**

Under Colorado law, to prove her claim for breach of contract, the Plaintiff must establish: (i) that a contract existed with the relevant Defendant; (ii) that she performed her obligations under the contract or that her performance was excused; (iii) that the Defendant failed to perform the contract as required; and (iv) that she suffered injury as a result.  *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Turning first to Travelers' motion, Travelers contends that the Plaintiff cannot establish that a contract existed between herself and Travelers.  The Plaintiff responds that, pursuant to C.R.S. § 38-33.3-313, she is an deemed by law to be an insured under Travelers' policy covering the Association.  That statute requires that a condominium association maintain property and liability insurance covering the common elements of the condominium.  C.R.S. § 38-33.3-313(1). To comply with this requirement, the policy must provide that each unit owner is an insured person "with respect to <u>liability</u> arising out of such unit owner's interest in the common elements." C.R.S. § 38-33.3-313(4)(a) (emphasis added).  Notably, nothing in the statute requires unit owners to be named as insureds with respect to the <u>property</u> insurance on common elements required by C.R.S. § 38-33.3-313(1)(a); the unit owners are insureds only as to the <u>liability</u> insurance for common elements required by C.R.S. § 38-33.3-313(1)(b).

The term "liability insurance" generally refers to the insured's – here, the unit owner's – liability to a third party, and the insured's ability to assert a claim under such a policy arises only after the insured's liability to a third party has been asserted.  *Continental Western Ins. Co. v. Heritage Estates Mutual Housing Auth.,* 77 P.3d 911, 913 (Colo. App. 2003), *citing Allstate Insurance Co. v. Huizar*, 52 P.3d 816, 820 (Colo. 2002).  In other words, the statute requires the Association to obtain insurance on behalf of each unit owner for claims that <u>third parties</u> might

make against such owners arising out of common elements of the property, but it does not require the Association to procure insurance on behalf of a unit owner to cover damages that the unit owner suffers herself due to common elements. Even assuming that the Plaintiff is correct that construction defects in the common elements are the source of her injuries here, she is asserting first-party claims of injury on her own behalf, not claims that would fall within the statutorily-required liability insurance. *Continental*, 77 P.3d at 913 (insured's first party claim could not invoke attorney fee provision found only in liability coverage).

Accordingly, the Plaintiff has not established that, by operation of law, she is deemed to be insured by Travelers for the claims she asserts here. She points to no other alleged contract between herself and Travelers sufficient to support the breach of contract claim, and thus, Travelers is entitled to summary judgment on the breach of contract claim asserted against it.

Turning to the Association's motion, the Association concedes that it is party to a contract with the Plaintiff, namely the "Declaration." Instead, it argues that the Plaintiff cannot prove that the Association has breached any portion of the Declaration. The Plaintiff responds that the Association has breached Article 6.1(a) of the Declaration, which requires the Association to "maintain [and] repair . . . the Common Elements," in that the Association has failed to repair or replace "the defective sewer line that is leaking sewer gas" into her unit. In response, the Association does not dispute that Article 6.1(a) exists or that it would require the Association to repair a defective sewer line in a common element; rather, it contends that the Plaintiff cannot establish that an allegedly defective sewer line in a common element is the source of the odor the Plaintiff complains of. Thus, the question presented is whether the Plaintiff can show a genuine issue of fact as to whether the odor is coming from a defect in a common element.

7

To demonstrate the existence of a genuine issue of fact, the Plaintiff must point to specific evidence that, if accepted by the factfinder, would be sufficient to establish that fact. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). It is not sufficient to merely assert the existence of facts; the Plaintiff must point to the specific evidence – affidavits, depositions, exhibits, or other evidence – that establish the fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). With regard to her assertion that a defective sewer line in a common element is the source of the odor, the Plaintiff points only to "Exhibit 6."[4] *Docket* # 148 at 8-9. Exhibit 6 is a one-page letter to the Plaintiff from Robert Kinning that recites the findings of an inspection of the Plaintiff's unit conducted by Kinning on September 5, 2003. Kinning states that "we discovered [ ] three different areas that indicate the presence of excessive methane gas." Kinning goes on to state that "Without doing major investigation and/or demolition work, it is difficult to pinpoint the exact cause of the methane odor. However, in my opinion, I suspect there may be a leak in the piping below the concrete floor." Kinning suggests that the Plaintiff "contact your builder and/or the plumbing contractor, as they would be the ones most familiar with the locations of the existing piping."

Taking Kinning's letter in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has raised a genuine issue of material fact with regard to whether the odor is resulting from a common element. Although Kinning's letter is by no means definitive, one could reasonably read it to state an opinion that <u>one</u> potential source of the odor is a leak located below

---

[4]The Plaintiff's method of attaching exhibits, in which several disparate exhibits are contained in each electronically-filed attachment, violates D.C. Colo. Electronic Case Filing Procedures (Civil) § V.H.3 ("Each exhibit reference in a pleading, motion, brief of other electronic filing . . . shall be submitted to ECF as a <u>separate</u> ECF attachment.") (emphasis added).

the concrete floor.[5]  Notably, Kinning's letter reveals that he discovered elevated levels of

methane gas in three separate locations, and there is nothing in the Plaintiff's theory of the case

that requires her to prove that the odor is emanating from one and only one source.  So long as

one source of the odor is within a common element, the Plaintiff's breach of contract claim

requires trial.  Read generously in favor of the Plaintiff, Kinning's letter expresses an opinion that

a leak below the concrete floor is one potential explanation for the odor.  Given that Kinning did

not opine as to any other potential source for the gas, the jury might find that a leak below the

concrete floor is the most likely explanation for the odor.  Not without some trepidation,[6] the

Court finds this to be sufficient to raise a genuine issue of fact requiring trial of the breach of

---

[5]No party has addressed what constitutes a "common element," but all seem to assume
that a leak below the concrete floor would fit that definition.

[6]The Court is, quite frankly, struck by the degree of equivocation in Kinning's letter – he
states that he "suspects" that there "may be" a leak.  This is a far cry from the definitive expert
opinion that a plaintiff typically proffers in support of a claim.  Indeed, given Kinning's own
apparent  uncertainty as to his opinion, the Court has some doubt that the Plaintiff could ever
prove, by a preponderance of the evidence, that the odor is coming from a common element based
on Kinning's opinion alone.  Moreover, Kinning's suggestion to the Plaintiff – that she contact a
plumber who might be more familiar than Kinning with the locations of the existing piping – raises
concerns as to whether Kinning is even qualified under Fed. R. Evid. 702 to render such an
opinion.  The Court notes that the Defendants previously moved to exclude Kinning's testimony
under Rule 702 (**# 158**), but that motion was denied (**# 179**) with leave to refile.  To date, the
Defendants have not refiled that motion, and thus, the Court will presume for purposes of this
motion that Kinning's opinion testimony will be admissible.  Nevertheless, the Court has serious
doubts as to whether the breach of contract claim against the Association will survive a Fed. R.
Civ. P. 50 motion at the close of the Plaintiff's case at trial.

contract claim against the Association.[7]  Accordingly, the Association's motion for summary judgment on the breach of contract claim is denied.

### C.  Battery and assault claims

Both Defendants seek summary judgment on the battery and assault claims on the same grounds.  Colorado recognizes the tort of battery on the terms set forth in section 18 of the Restatement (Second) of Torts.  *White v. Muniz*, 999 P.2d 814, 816 (Colo. 2000).  To prove that claim, the Plaintiff must show that: (i) the Defendant acted, intending to cause a harmful or offensive contact with her, and (ii) that an offensive or harmful contact resulted.  *Id.*  The intent element applies to both the intent to cause the contact, and the intent that the Plaintiff will find the contact to be harmful or offensive, although the Plaintiff need not show that the Defendant intended the contact to result in actual harm or injury.  *Id.* at 818, 819.  The same principles apply to a claim for assault, *id.* at 815 n. 3, but the Plaintiff need only show that the Defendant acted, intending to cause her to the apprehension of a harmful or offensive contact, not that such a contact actually resulted.  *Bohrer v. DeHart*, 943 P.2d 1220, 1224 (Colo. App. 1996).

Both Defendants contend that the Plaintiff cannot show that they acted to cause her to suffer an offensive contact or the apprehension of such a contact.  The Plaintiff responds that the contact in question is her exposure to the odor and alleged sewer gas, and that the Defendants' intentions can be inferred from their refusal to repair the leak and alleged instructions to others

---

[7]The Association makes a perfunctory argument that the Plaintiff cannot prove that the Association's breach of the Declaration caused the Plaintiff to suffer damages.  The Plaintiff asserts that she was forced to move out of her apartment due to continuing exposure to the odor, and that she subsequently had to move for tax abatement on the property.  Taken in the light most favorable to the Plaintiff, this is sufficient to prove damages resulting from the Association's alleged breach of the Declaration.

not to acknowledge or attempt to locate the leak.  Such a theory, even if supported by evidence, would be insufficient to establish an assault or battery as a matter of law.

Both claims require that the Defendants commit an act that causes a harmful contact, or the apprehension of such a contact.  Here, the Plaintiff does not allege that the Defendants committed the initial act that caused her to be exposed to the odor and gas in the first instance – that act she attributes to the builder, Genesee, in the form of defective construction.  Moreover, the Plaintiff does not allege that, once on the scene, the Defendants took any action to magnify her exposure to the gas, *e.g.* by further opening a leak in a pipe, or by creating additional leaks.  Thus, the Plaintiff has not alleged an act by either Defendant that was the direct and proximate cause of her being exposed to the odor and gas.  Rather, the Plaintiff only alleges that the Defendants did not take appropriate remedial steps to intervene to stop an ongoing offensive contact that the Plaintiff was suffering as a result of actions by a third party.  Put simply, the Plaintiff does not allege that the Defendants <u>caused</u> the contact to occur, only that they failed to <u>stop</u> it from occurring.

Nothing in Colorado law or the Restatement appears to contemplate expanding the scope of the torts of battery and assault to include liability for persons who fail to intercede to prevent or discontinue an offensive contact being caused by another.  Indeed, the Restatement notes that while "[t]here is perhaps no essential reason why, under modern law, liability for batter might not be based on inaction, where it is intended to result and does result in a harmful or offensive contact . . . no such case has arisen and what little authority there is denies the liability."  Restatement (Second), <u>Torts</u>, § 14, comment c.  The Plaintiff cites to no authority adopting her expanded theory of tort liability in these circumstances, and thus, the Court finds that liability in

assault or battery cannot lie against an individual who fails to act to halt an ongoing offensive

contact caused by another, even if the individual's failure to act is premised on an intent that the

harmful contact continue.  The Defendants are entitled to summary judgment on both the battery

and assault claims against them in these circumstances.

### D.  Breach of fiduciary duty

Travelers seeks summary judgment on the Plaintiff's breach of fiduciary duty claim,

arguing, among other things, that she cannot establish that Travelers owed her any such duty.  In

response, the Plaintiff offers a somewhat unclear argument to the effect that because the

Association owed the Plaintiff a fiduciary duty, and because Travelers is an agent of the

Association, Travelers "stands in the shoes of the principal with regard to third persons," and

thus, owes the Plaintiff the same fiduciary duty.  In support of this somewhat novel syllogism, the

Plaintiff cites only to *Moses v. Diocese of Colo.*, 863 P.2d 310, 322 (Colo. 1993).  The alleged

relevance of *Moses* – a case in which the Colorado Supreme Court affirmed a finding that a

bishop owed a fiduciary duty to a parishioner who came to complaint of sexual abuse at the hands

of a priest, due to the bishop occupying a superior position to the parishioner and his assumption

of a duty to act in the parishioner's best interests, 863 P.2d at 322-23 – to the Plaintiff's argument

is not apparent.  The case clearly does not stand for the proposition that the Plaintiff urges – that

where a person owes a fiduciary duty to another, all agents of that person owe a similar fiduciary

duty to the other.  Moreover, the Plaintiff appears to simply assume facts essential to her

argument – *e.g.* that the Association owes her a fiduciary duty, that Travelers acts as an agent of

the Association – rather than identify specific evidence and legal authority which establishes those

facts.  Accordingly, the Court finds that the Plaintiff has failed to carry her burden of establishing

a genuine issue of fact as to whether Travelers owed her a fiduciary duty, and thus, Travelers is entitled to summary judgment on her claim that it breached such a duty.

The Association argues that "Plaintiff's breach of fiduciary duty claim fails not because of the absence of duty, but because of a complete absence of any proof that a common element is responsible for Plaintiff's complaints." *Docket* # 140-2 at 13. Thus, the viability of this claim, like the breach of contract claim against the Association, turns on the question of whether the Plaintiff can demonstrate a genuine issue of fact as to whether at least one source of the odor and gas is in a common element of the condominium. For the same reasons stated *supra.*, the Court finds that the Plaintiff has made such a showing – albeit just barely – and that the breach of fiduciary duty claim should proceed to trial. However, the same concerns discussed by the Court as to the definitiveness and admissibility of Kinning's opinion – the lynchpin of both the Plaintiff's breach of contract and breach of fiduciary duty claims – apply with equal force to this claim as well. Nevertheless, the Association's motion for summary judgment on this claim is denied.

### E.  Negligent infliction of emotional distress

To prove a claim for negligent infliction of emotional distress under Colorado law, the Plaintiff must establish: (i) that the Defendant was negligent; (ii) that as a result of such negligence, she was subjected to an unreasonable risk of bodily harm; (iii) that she was caused to fear for her own safety; (iv) that such fear is shown by either physical consequences or long-continued emotional disturbance; and (v) that the fear is the cause of the damages claimed. *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 93 (Colo. App. 1997).

Both Defendants' motions challenge the Plaintiff's ability to establish the first and second elements of the claim, *i.e.* that the Defendant was negligent, and that such negligence created an unreasonable risk of bodily harm to the Plaintiff.[8]

As to the first element, the Association again confines its argument to be that the claim fails because the Plaintiff cannot prove that the odor and gas are emanating from a common element. *Docket* # 140-2 at 13 ("To survive summary judgment, Plaintiff must present an evidentiary fact that demonstrates more than the mere possibility that her odor complains are related to a common element.") For the reasons – and caveats – stated previously with regard to the breach of contract and breach of fiduciary duty claims, the Court finds that the Plaintiff has adequately presented an issue of fact with regard to the Association's negligence towards her.

---

[8]The Court notes that although the Association asserts in its motion that the Plaintiff cannot establish the element of unreasonable risk of harm and promises an analysis of that contention in its brief, *Docket* # 140 at 5, its brief addresses only the Plaintiff's inability to establish the first element. *Docket* # 140-1 at 14-15 (titled "The Association cannot be Negligent where there is no Duty"). Nevertheless, because the Association does not bear the burden of proof at trial, it need only identify the elements of the claim that it contends the Plaintiff cannot establish, and the burden is then on the Plaintiff to demonstrate an issue of fact with regard to each challenged element. *Celotex*, 477 U.S. at 323 ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the evidence, if any, it believes demonstrates the absence of a factual issue on an element). The Association is not required to address each and every challenged element in an accompanying brief, particularly where its contention is that there is no evidence whatsoever to support that element. This Court's format requirements for summary judgment motions, *see* MSK Practice Standards (Civil) V.H.3.b.1, are designed to give the non-movant with the burden of proof at trial adequate notice of the grounds for the motion, even if no supporting brief is admitted. Indeed, by encouraging the non-movant to adopt a similar format for its response, MSK Practice Standards (Civil) V.H.3.b.2, the Court seeks to ensure that the non-movant meets each challenge to an element head on. The Association's motion complies with the Practice Standards, and thus, gave adequate notice to the Plaintiff as to the elements being challenged, even if the Association's brief did not expressly address arguments as to that element. However, the Plaintiff's response brief did not adhere to the Practice Standards, and thus, did not address the Plaintiff's ability to establish the second element of this claim.

14

Travelers also argues that the Plaintiff cannot establish Travelers' negligence because she can show no duty owed to her by Travelers. The Plaintiff's response to this argument is sufficiently terse that it can be quoted here in full: "Travelers claims it owes no duty to plaintiff because she is not an insured of Travelers. This bogus claim has been dealt with supra. [with regard to the breach of contract claim against Travelers]. Plaintiff is an insured of Travelers by statute." For the same reasons discussed above in the context of the breach of contract claim against Travelers, the Plaintiff's argument that she is an insured of Travelers with regard to the issues here is without merit. Because this is the sole argument proffered by the Plaintiff with regard to an alleged duty owed by Travelers to her, the Court finds that Travelers is entitled to summary judgment on the negligent infliction of emotional distress claim.

The Court also finds that the Plaintiff has failed to demonstrate a genuine issue of fact as to whether she was exposed to a risk of bodily harm. As noted above, the Plaintiff responded only to the arguments raised in the Association's brief, not its motion, and thus, did not purport to assert the existence of any facts necessary to establish this element. Nevertheless, Travelers raised the same argument in its own motion, and the Court will consider the Plaintiff's response to that issue in Travelers' motion to be asserted by the Plaintiff with regard to both Defendants' motions. Nevertheless, the Plaintiff's response is inadequate. The Plaintiff addresses this issue in a single sentence, stating "Travelers' inaction caused plaintiff fear of continual exposure to sewer gas, a highly toxic substance." *Docket #* 149 at 9. In support of this assertion, she refers back to item no. 7 in her "Statement of Facts." That item states, in pertinent part, "All this time she was living in sewer gas which was highly toxic, and bad for her health. This created a real risk of harm to her." *Docket #* 149 at 2-3. However, the Plaintiff cites to no evidence in support of any assertion

in item no. 7,  much less identify evidence that support her contention that sewer gas is "highly toxic" and "bad for her health."  In opposing a motion for summary judgment, the Plaintiff may not simply rely on unsupported assertions, but must point to specific evidence establishing such a contention.  *Adler*, 144 F.3d at 671.  Because the Plaintiff does not point to evidence supporting her contention that the Defendants' negligence subjected her to an actual risk of bodily harm, she fails to carry her burden of demonstrating a genuine issue of fact as to the second element of her claim of negligent infliction of emotional distress.  Accordingly, both Defendants are entitled to summary judgment on this claim.

**F.  Breach of duty of good faith**

Both Defendants seek summary judgment on the Plaintiff's claim for breach of the duty of good faith, and all parties' arguments on this issue are essentially the same as those raised with regard to the Plaintiff's breach of contract claims – namely, that Travelers denies that there is any contractual agreement with the Plaintiff for a good faith claim to attach to, that the Plaintiff contends that she is contractually an insured of Travelers, that the Association denies that it breached any contractual obligation to repair the alleged leak because the Plaintiff cannot establish that it is located in a common element, and that the Plaintiff contends that Kinning's letter establishes that the leak is located in a common element.

For the same reasons set forth with regard to the breach of contract claim, the Court finds that Travelers is entitled to summary judgment on this claim, as the Plaintiff cannot show that Travelers owed her any contractual duty that would support a duty to act in good faith.  Similarly, the Association is not entitled to summary judgment on this claim at this time, as the Plaintiff has raised a genuine issue of fact as to whether the leak is located in a common element.

16

### G.  Civil conspiracy

To prove a claim for civil conspiracy under Colorado law, the Plaintiff must prove: (i) a meeting of the minds among two or more persons; (ii) to establish a common object; (iii) one or more unlawful overt acts in furtherance of that object; and (iv) resulting damages.  *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006).  Both Defendants argue that the Plaintiff cannot establish the existence of any meeting of the minds among two or more people, and Travelers further argues that the Plaintiff also cannot show any unlawful objective or unlawful overt act.  The Plaintiff responds by stating that "Genesee/[the Association] agreed to do nothing more to repair plaintiff's sewer leak," that "[the Association] and Travelers agreed and conspired to hector plaintiff's attorney to disrupt and defeat a valid insurance claim," and that "[the Association's] attorneys, hired by Travelers, filed the phony grievance against plaintiff's lawyer."  *Docket* # 148 at 13-14.  The Plaintiff also alleges that Travelers engaged in various actions, "working in concert with [the Association] and its alter ego Genesee [to] delay and derail plaintiff's valid first party insurance claim."  *Docket* # 149 at 9-10.

None of the Plaintiff's allegations in Docket # 148, her response to the Association's motion, cites to any evidence in support of her assertions of various agreements.  Although it is not required to comb the record for evidence to support the Plaintiff's claims, *Adler*, 144 F.3d at 671, the Court has also reviewed the Plaintiff's "Statement of Facts" in her response to the Association's motion, and finds nothing therein that asserts the existence of any meeting of the minds between the Association and any other entity, much less any assertion that itself points to supporting evidence.  Accordingly, she has failed to carry her burden of showing a genuine issue

of fact as to an essential element of her civil conspiracy claim against the Association, and the Association is entitled to summary judgment on this claim.

The Plaintiff's assertions of various meetings of the minds in Docket # 149, her response to Travelers' motion, cites to item no. 8 in her Statement of Facts in support. Item no. 8 asserts that "In January 2004, as a result of plaintiff's claim and at the instance (sic) of defendant Travelers, a Denver law firm filed a claim against plaintiff's lawyer, claiming he was engaged in the unauthorized practice of law in Colorado. The claim was rejected by the Commission on the Unauthorized Practice of Law in April 2004, which found that plaintiff's lawyer was specifically authorized to represent plaintiff, but during the time it was pending, the law firm refused to community with my lawyer and kept sending letters to me to call them." *Docket* # 149 at 3. The Court notes several defects in the Plaintiff's reliance on this assertion as establishing the challenged elements of the civil conspiracy claim. First, the Plaintiff offers no citation to any allegation other than item no. 8 supporting her assertions of other meetings of the mind between Travelers and others, and thus, the Court confines the remainder of its consideration to the alleged conspiracy referenced in that single item. Second, the Court notes that neither item no. 8 nor the body of the Plaintiff's brief on the civil conspiracy issue cites to any evidence in the record. This alone is sufficient to grant summary judgment to Travelers. *Adler, supra.*

Third, even if it were arguably sufficient to allege a meeting of the minds between Travelers and the "Denver law firm," the allegation fails to adequately allege the existence of unlawful acts in furtherance of the conspiracy. The only acts allegedly committed in furtherance of the Travelers-"Denver law firm" conspiracy are the filing of a complaint against the Plaintiff's lawyer, and the sending of letters to the Plaintiff. Neither of these acts are unlawful. The Plaintiff

18

asserts only that the complaint against her lawyer was rejected as unfounded.  The mere filing of a complaint that turns out to be unfounded is not an unlawful act sufficient to support a civil conspiracy claim.  *See Walker*, 148 P.3d at 396 ("we perceive no reason why an unfounded complaint necessarily implicates a deliberate falsehood or an unlawful act").  Moreover, even assuming that Travelers conspired with the law firm to send letters to the Plaintiff instead of her counsel, such an action might implicate the law firm's ethical obligations, but there is no reason to believe that this act is somehow unlawful.

Accordingly, the Plaintiff has failed to carry her burden with regard to the civil conspiracy claim against Travelers, and Travelers is therefore entitled to summary judgment on that claim.

### H.  Remaining motions

#### 1.  Genesee's Motion *in Limine*

Genessee seeks **(# 156)** to exclude from trial any evidence of the valuation placed on the Plaintiff's condominium by the county tax assessor, on the grounds that such an assessment constitutes inadmissible expert opinion, and is unduly prejudicial in that neither Genesee nor any party other than the Plaintiff participated in the valuation of the property.  The Plaintiff opposes the motion, arguing that the valuation records are government records admissible over a hearsay objection pursuant to Fed. R. Evid. 803(8)(B).

The Court denies Genesee's motion without prejudice at this time.  Motions *in limine* directed to the admissibility of evidence often present questions that are difficult to resolve in the abstract.  Here, it is not completely clear what documents the Plaintiff intends to offer, the witness she intends to offer them through, and the purpose for which they are being offered.  Moreover, there is no assurance that, in light of the rulings herein and other events that may occur prior to

19

trial, the documents will be offered at all.  The Court declines to make a speculative ruling on the admissibility of the documents at this time.  Rather, Genesee may interpose an objection at trial when the documents or other objectionable evidence is first proffered, and the Court will entertain the objection at that time.

### 2. Travelers' Motion *in Limine*

Travelers moves **(# 157)** to exclude the testimony of several witnesses it contends were not disclosed during discovery.  The Plaintiff did not respond to this motion.

Because the Court grants Traveler's summary judgment motion in its entirety, this motion by Travelers is rendered moot.  The Court is cognizant that the Association has purported to join in this motion, but because the Association has not moved separately for the requested relief as it relates particularly to the Association, it has merely joined in a motion that has become moot.  Accordingly, the motion is denied as moot.  However, all parties are advised that the Court will exclude the testimony of any witness who was not properly disclosed during discovery if there has been prejudice.

### 3. Plaintiff's Motion for Costs and Fees

The Plaintiff requests **(# 161)** both costs and attorney's fees for "prepar[ing] to defend" against various affirmative defenses asserted by the Defendants, but withdrawn at the time of the filing of the Joint Pretrial Order.  The Plaintiff argues that these defenses "lacked substantial justification," and that as a result, she is entitled to an award of costs and attorney's fees relating to these defenses under C.R.S. § 13-17-102(4) and § 13-16-108.

The Court denies this motion without prejudice, as the case has yet to reach its conclusion.  Just as the Plaintiff believes she is entitled to costs and fees (although the Court

makes not findings as to the merits of that claim of entitlement, nor to the applicability of the statutory vehicle by which she claims them) for defenses that have been withdrawn, the Defendants may also ultimately be entitled to costs and fees for claims unsuccessfully asserted by the Plaintiff.   Rather than engage in piecemeal review of each unsuccessful claim or defense individually, the Court finds that the better course of action is to await the conclusion of this litigation to consider whether, and to what extent, any party is entitled to costs and/or fees.

## CONCLUSION

For the foregoing reasons, the Association's Motion for Summary Judgment **(# 140)** is **GRANTED IN PART**, insofar as the Association is entitled to summary judgment on the Plaintiff's battery, assault, negligent infliction of emotional distress, and civil conspiracy claims, and **DENIED IN PART**, insofar as there remains a genuine issue of fact for trial as to the Plaintiff's breach of contract, breach of fiduciary duty, and breach of the duty of good faith claims as against the Association.  Travelers' Motion for Summary Judgment **(# 141)** is **GRANTED** in its entirety.  The Court will enter judgment[9] in favor of Travelers on all claims asserted against it, and the caption of the case is amended to delete Travelers as a party to his action.  Genesee's Motion *In Limine* to Exclude Evidence Concerning County Assessor's Valuation of Property **(# 156)** is **DENIED** without prejudice to a timely objection at trial. Traveler's Motion *In Limine* to Exclude Plaintiff's Undisclosed Trial Witnesses **(# 157)** is **DENIED AS MOOT**.  The Plaintiff's

---

[9]Because some portions of the Plaintiff's claims against Travelers purport to be derivative of claims lying against the Association, and thus turn on many of the same operative facts, the Court finds it inappropriate to enter a final judgment against Travelers at this time pursuant to Fed. R. Civ. P. 54(b).  A judgment in favor of Travelers and against the Plaintiff will issue when the litigation by the Plaintiff against the Association concludes.

Motion for Costs and Fees (**# 161**) is **DENIED** without prejudice to refiling at the conclusion of the litigation involving the Plaintiff.

Dated this 16th day of March, 2007

**BY THE COURT:**

_____
Marcia S. Krieger
United States District Judge